# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 20, 2020

Lyle W. Cayce
Clerk

No. 18-50784

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAVID DAVALOS, SR.,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:16-CR-1115-11

Before JOLLY, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Defendant-Appellant David Davalos, Sr. ("Mr. Davalos") challenges several aspects of the criminal sentence imposed on him by the district court. Having considered his arguments, we affirm in part, vacate in part, and remand this case for further proceedings.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50784

## I. BACKGROUND

In August 2016, a federal grand jury returned a nine-count indictment against Mr. Davalos and 25 others. Mr. Davalos was specifically named in two counts: Count Three, which charged him with conspiring to possess with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); and Count Five, which alleged that he opened, used, and maintained a premise in Crystal City, Texas, for the purpose of distributing cocaine in violation of 21 U.S.C. § 856(a)(1) and (b).

The indictment included both (1) a notice of demand for forfeiture of real property; and (2) a money judgment with a provision regarding substitute assets. In January 2017, the government filed a bill of particulars stating that it sought the criminal forfeiture of both the property named in the indictment and additional properties described in the bill.

In March 2017, Mr. Davalos pleaded guilty to Counts Three and Five of the indictment without a plea agreement. The government offered a factual basis supporting the plea, which Mr. Davalos admitted with two exceptions. Specifically, Mr. Davalos (1) objected to the drug quantity and drug proceeds in the factual basis, and (2) notified the court that he did not agree to the government's forfeiture provisions. The district court approved Mr. Davalos's plea, but deferred matters related to the forfeiture to the sentencing hearing.

In May 2018, the government filed an advisory regarding the items of which it intended to seek forfeiture at the upcoming sentencing hearing. The advisory noted that, with respect to Mr. Davalos, the government planned to seek (1) "[a] sum of money equal to the proceeds obtained by [Mr. Davalos] from the violations he has pled guilty to"; (2) real property located at 310 West Zapata Street in Crystal City, Texas; (3) $4,118.00 in U.S. currency; and (4) a 2004 Cadillac Escalade.

No. 18-50784

Mr. Davalos's sentencing hearing took place on August 29, 2018. During the hearing, the court held a sealed bench conference to resolve issues regarding drug quantity, role adjustments, and forfeiture. Following the bench conference, the court determined that Mr. Davalos was subject to a guideline sentence of 210–262 months for Count Three and 210–240 months for Count Five. The district court found the advisory guideline sentencing ranges "adequate" and imposed a concurrent 235-month term of imprisonment on each count. The court also sentenced Mr. Davalos to supervised release.

The district court did not enter its written judgment until September 6, 2018. That judgment included an order of forfeiture and a forfeiture money judgment. However, the government had not yet filed a motion for a preliminary order of forfeiture or motion for entry of money judgment. It did not do so until several weeks after entry of the district court's written judgment. The district court then entered a preliminary order of forfeiture and an order of money judgment. Those orders were filed 83 and 97 days after Mr. Davalos's sentencing, respectively. Mr. Davalos filed his notice of appeal on September 19, 2018.

On appeal, Mr. Davalos challenges (1) the district court's entry of the preliminary order of forfeiture and order of money judgment; and (2) his within-guidelines sentence. He also seeks remand to conform the district court's oral pronouncement of sentence to its written judgment.

## II. ORDER OF FORFEITURE AND MONEY JUDGMENT

Mr. Davalos advances two challenges to the forfeiture and money judgment entered against him. We address each in turn.

### A. Rule 32.2

Mr. Davalos contends that the district court exceeded its subject-matter jurisdiction when it entered a preliminary order of forfeiture and order of

No. 18-50784

money judgment more than fourteen days after his sentencing and the entry of judgment. Existing caselaw dictates otherwise.

The imposition of criminal forfeiture is governed by Federal Rule of Criminal Procedure 32.2. That rule provides that the court, when forfeiture is contested, must conduct a hearing after it finds the defendant guilty. Fed. R. Crim. P. 32.2(b)(1)(B). If the court "finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A). Unless it is "impractical" to do so, the court "must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2.(b)(4)." Fed. R. Crim. P. 32.2(b)(2)(B). Rule 32.2(b)(4) provides that the preliminary forfeiture order becomes final either "[a]t sentencing" or "at any time before sentencing if the defendant consents." Fed. R. Crim. P. 32.2(b)(4). The district court must "include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing." Fed. R. Crim. P. 32.2(b)(4)(B). The court must also include the forfeiture order, either directly or by reference, in the judgment. *Id.*

Here, while the written judgment entered by the district court included an order of forfeiture and a forfeiture money judgment, the government did not actually move for a preliminary order of forfeiture or for entry of money judgment until more than a month after sentencing. The preliminary order of forfeiture was not issued until 83 days after sentencing, and the order of money judgment was entered 97 days after sentencing.

Mr. Davalos therefore argues that the district court lacked subject matter jurisdiction to enter either the preliminary order of forfeiture or the

order of money judgment. While subject matter jurisdiction is reviewed *de novo* as a question of law, *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 636 (5th Cir. 2003), this court's precedent makes clear that Mr. Davalos's argument is incorrect. The issue presented here is not jurisdictional, and plain error review applies.

In *United States v. Marquez*, a $2 million money judgment was entered against the defendant.  685 F.3d 501, 509 (5th Cir. 2012). Although the district court included the money judgment in the defendant's criminal judgment, it failed to enter a preliminary order of forfeiture. *See id.* at 507, 510. On appeal, the defendant argued that the money judgment was improperly issued because the district court failed to comply with Rule 32.2's requirements. *Id.* at 509. The panel applied plain error review to the forfeiture issue because the defendant did not object to the district court's failure to enter the preliminary order of forfeiture. *See id.* at 510.  Applying plain error review, the panel affirmed the district court because the defendant could not show that his substantial rights were affected by the district court's errors. *Id.*  Although no preliminary order was entered, this court allowed the money judgment to stand.

The *Marquez* panel deemed the rules set forth in Rule 32.2 "procedural requirements." *Id.* at 509; *see also id.* at 510 ("Marquez has the burden of showing that these procedural defects affected his substantial rights."). And "three-judge panels . . . abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc." *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) (quoting *United States v. Kirk*, 528 F.2d 1057 (5th Cir.1976)). We therefore apply plain error review to the issue at hand.

No. 18-50784

On plain error review, this court may not correct an error in the district court unless (1) there is error; (2) the error is plain; and (3) the error affects substantial rights. *United States v. Gomez*, 905 F.3d 347, 353 (5th Cir. 2018). Even when all three of those conditions are met, this court may only exercise its discretion to notice a forfeited error if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

With respect to the first two prongs of the plain error analysis, Mr. Davalos has satisfied his burden. Rule 32.2's mandates are clear, and the district court's deviation from those mandates is plainly erroneous. But Mr. Davalos has not demonstrated that the district court's failure to follow Rule 32.2 affected his substantial rights.

"As a general rule, an error affects a defendant's substantial rights only if the error was prejudicial." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 364 (5th Cir. 2010) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). "Error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *Id.* (citation omitted). "The probability of a different result must be sufficient to undermine confidence in the outcome of the proceedings." *Id.* (citation omitted).

Mr. Davalos has not shown that there is a reasonable probability that the result of his proceedings would have been any different had the district court followed the appropriate procedures. *See, e.g.*, *Marquez*, 685 F.3d at 510. As such, he is not entitled to relief on this ground.

## B. *Honeycutt* **and 21 U.S.C. § 853**

In addition to his argument regarding Rule 32.2, Mr. Davalos asserts that the money judgment entered against him should be vacated in light of *Honeycutt*, a recent Supreme Court decision addressing forfeiture from an individual drug conspiracy defendant relating to the proceeds of a criminal

No. 18-50784

conspiracy. *See Honeycutt v. United States,* 137 S. Ct. 1626, 1630 (2017). We agree.

21 U.S.C. § 853 governs forfeiture of property constituting or derived from proceeds a defendant obtained as the result of certain drug crimes. *Id. Honeycutt* concerned how Section 853 operates when two or more defendants act as part of a conspiracy, *id.*, as is the case here. The case established that, under Section 853, a defendant may not be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire. *Id.* at 1635.

In this case, the government's multi-party indictment was issued before publication of *Honeycutt*. It sought a money judgment of $5,980,000.00 against all defendants, for which they would be jointly and severally liable. At the sentencing hearing, the district court initially found "that there is a money judgment in the case of the amount alleged of [$]5,980,000, but that is joint and several liability." The government then alerted the district court to *Honeycutt*, which was decided in the period between filing of the indictment and the sentencing hearing. After the government indicated that it was only seeking $1,794,000.00 because of *Honeycutt*, the following exchange occurred:

> THE COURT: The total amount of the money judgment is 5,980,000, but that is everybody combined. Not just you alone. And you said it was one what?
>
> AUSA: 1.794 million.
>
> THE COURT: Okay. Once – I don't really know how to say this now because the case law has gotten really strange about joint and several liability.
>
> AUSA: And he would just be liable, not jointly and severally, just for him, for the 1.794.
>
> THE COURT: Okay, you're not – this is not joint and several liability?
>
> AUSA: No, Your Honor.

7

No. 18-50784

THE COURT: All right. So your amount only, alone, would be 1.794 million, not the 5.98. Okay? Everybody else will be responsible for the rest of it. Okay?

There was no more discussion regarding the money judgment.

Mr. Davalos argues that the district court erred by entering a money judgment against him for $1.794 million without making any factual findings about whether he actually acquired that amount or other substitute property as a result of the crime. We review *de novo*. *See United States v. Rasco*, 123 F.3d 222, 226 (5th Cir. 1997).

The government contends only that the district court "did hold a lengthy hearing where it was determined that the conspiracy was responsible for proceeds in the amount of $5,980,000" and that its imposition of the $1,794,000 money judgment against Mr. Davalos was "procedurally and substantively reasonable and should be affirmed." It cites no law in support of that argument. And the Supreme Court made clear in *Honeycutt* that the provisions of Section 853(a) "are in accord with the limitation of forfeiture to property the defendant himself obtained." *Honeycutt*, 137 S.Ct. at 1633.

Because the money judgment entered against Mr. Davalos is without sufficient factual support, it should be vacated and this case remanded for the purpose of making factual findings regarding the appropriate money judgment.[1]

---

[1] Given this finding, we do not address the parties' dispute regarding whether the district court should have required the government to make a showing under Section 853(p) prior to entering the money judgment. We note, however, that even Section 853(p)—"the sole provision of § 853 that permits the [g]overnment to confiscate property untainted by the crime"—is limited to property "up to the value of the tainted property." *Honeycutt*, 137 S.Ct. at 1633–34 (internal quotation marks and citation omitted). As explained above, the district court here made no factfinding regarding that value.

## III. OTHER PROVISIONS OF SENTENCE

Mr. Davalos raises two additional challenges to his sentence, arguing that (1) the district court committed reversible plain error because it misstated the applicable standard in its Statement of Reasons; and (2) the case should be remanded because the district court's oral pronouncement of sentence conflicts with its written judgment. While we find Mr. Davalos's first argument unpersuasive, we agree that this case should be remanded so that the district court can amend the written judgment.

### A. Statement of Reasons

When the spread of an applicable guideline sentencing range exceeds 24 months, federal law requires the district court to state—in open court and at the time of sentencing—its "reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1). Here, the spreads of the applicable guideline sentencing ranges were 52 months for Count Three and 30 months for Count Five.[2] However, the district judge filed a Statement of Reasons incorrectly stating that Mr. Davalos's sentence was within an advisory guideline range that "does not exceed 24 months." Mr. Davalos therefore argues that this court should vacate his sentence and remand for resentencing.

Because Mr. Davalos did not raise an objection regarding this issue below, this court's review is for plain error. We therefore consider whether the district court committed plain error that affected Mr. Davalos's substantial rights. *See Gomez*, 905 F.3d at 353. We conclude that it did not.

"While the sentencing court is required to state 'the reasons for its imposition of the particular sentence,' a full explanation of the sentencing

---

[2] The district court determined that Mr. Davalos was subject to a guideline sentence of 210–262 months for Count Three and 210–240 months for Count Five.

factors is not required in every case." *United States v. Duke*, 788 F.3d 392, 396 (5th Cir. 2015) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)). Indeed, when the district court imposes a within-guidelines sentence, "'little explanation' is required" to satisfy 18 U.S.C. § 3553(c). *Id.* (citing *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005)). Rather, "[t]he sentencing judge should set forth enough to satisfy the appellate court that [s]he has considered the parties' arguments and has a reasoned basis for exercising h[er] own legal decisionmaking authority." *Id.* (cleaned up).

Here, the district court's oral statement of reasons for the imposition of Mr. Davalos's particular sentence was sufficient to meet the mandate of 18 U.S.C. § 3553(c). *See, e.g., Rita*, 551 U.S. at 359 ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively."); *Mares*, 402 F.3d at 519 ("When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required."). The district court made a statement immediately before announcing Mr. Davalos's particular sentence, noting that it was taking into account "the advisory guidelines, as well as the policy statements of those guidelines, together with other sentencing factors such as the nature and circumstances of the offense, the seriousness of the offense, the history and characteristics of the defendant, the need to promote respect for the law and to provide just punishment for the offense, [and] the need to deter future criminal conduct and to protect the public." The court also advised that it was taking into account "the allocution of the parties, as well as the factual information contained within the presentence report."

This court's opinion in *Ramos* is a useful analogue. There, the district court orally imposed a 144-month term of imprisonment and the written

judgment reflected the same 144-month term, but the Statement of Reasons stated that the term of imprisonment was 135 months. *United States v. Ramos*, 33 F. App'x 704, \*2 (5th Cir. 2002) (per curiam) (unpublished). A panel of this court noted that the district court "stated orally the reasons for imposing the particular sentence," concluding that "[t]he only logical conclusion for the discrepancy . . . is that the numeral '135' in the 'Statement of Reasons' section of the written judgment is merely a clerical error." *Id.* The panel found that "such a clerical error does not create doubts as to the period of incarceration the district court intended to impose" and "did not affect [the defendant's] substantial rights." *Id.*

Here, we conclude the same. Because the district court orally stated its reasons for imposing the particular sentence it did, the dictates of 18 U.S.C. § 3553(c) were satisfied. The clerical error in the subsequent Statement of Reasons did not affect Mr. Davalos's substantive rights.

## B. Written Judgment

Both parties acknowledge that, with respect to several special conditions associated with Mr. Davalos's term of supervised release, there is conflict between the district court's written judgment and oral pronouncement.

During the district court's oral pronouncement of sentence, it said to Mr. Davalos: "one of your standard conditions is that you're not supposed to associate with known felons." But the district court went on to state that Mr. Davalos had "the Court's permission to associate with" his son, brothers, and nephew, listing six individuals who were specifically exempted from the condition. That amendment to the standard condition does not appear in the written judgment.

There is additional conflict between the oral pronouncement and the written judgment regarding where Mr. Davalos may live after his release from prison. During sentencing, the district court said:

Now, this next condition, I'm – I'm imposing it right now in case something goes haywire in terms of the – the valid place for Mr. Davalos to live.

Mr. Davalos, I don't know yet what's going to happen with the forfeiture on your house, so I'm imposing this out of an abundance of caution. If, when you get out, you've got a place to live, probation will file a motion with me, [and] I'll remit this next condition. Okay?

That the first six months of your term of supervised release or your terms of supervised release, you shall reside at a residential reentry center for a term of six months, and you shall follow the rules and regulations of the center; that once employed, you shall pay 25 percent of your weekly gross income, so long as that amount does not exceed the daily contract rate.

While the written judgment reflects the imposition of a condition requiring Mr. Davalos to reside in a residential reentry center for a term of six months, it does not provide that this condition will be "remitted" if Mr. Davalos "has a valid residence to go to" when he is released from prison.

If a written judgement "broadens the restrictions of requirements of supervised release from an oral pronouncement," the "appropriate remedy is remand to the district court to amend the written judgment to conform to the oral sentence." *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006). We therefore conclude that this case should be remanded to the district court so that, with respect to the two issues discussed in this section, it may conform the written judgment to its oral pronouncement.

## IV. CONCLUSION

For the reasons stated above, we VACATE the forfeiture money judgment provision of Mr. Davalos's sentence. We REMAND this case to the district court so that it may (1) conduct factfinding regarding the appropriate value of the money judgment in accordance with *Honeycutt*; and (2) conform

the written judgment to its oral pronouncement of sentence. In all other respects, we AFFIRM.